CLAUDE NEON LIGHTS, INC., Plaintiff, *v.* FEDERAL ELECTRIC COMPANY, INC., and Others, Defendants.*

Supreme Court, New York County, September 30, 1929.

*Alfred P. W. Seaman* [*Julius Henry Cohen* of counsel], for the plaintiff.

*Philips, Mahoney, Liebell & Fielding* [*Jeremiah T. Mahoney* of counsel], for the defendant Claude Neon Federal Company.

*Sherman & Sterling* [*Guy Cary, Walter K. Earl, W. Deering Howe* and *Charles L. Craig* of counsel], for certain defendants.

COTILLO, J. This motion for an injunction is made in an action in equity between the Claude Neon Lights, Inc., and the Federal Electric Company, Inc., Claude Neon Federal Company, and the proposed buyers of two-thirds of the capital stock of the Claude Neon Federal Company. The relief sought in the complaint is an injunction against the proposed sale by the Federal Electric Company of its holdings in the Claude Neon Federal Company to the other defendants. Upon this motion the plaintiffs ask for temporary relief similar to the relief demanded in the complaint.

The plaintiff is a domestic corporation holding the exclusive

---

* Affd., 227 App. Div. 696.

right to manufacture and use luminescent neon tubes containing previously purified neon gas and provided with internal electrodes for illuminating the neon gas. These processes were patented in the United States Patent Office by one George Claude and are numbered United States letters patent No. 1,125,476, dated January 19, 1915; No. 1,131,910, dated March 16, 1915; No. 1,189,664, dated July 4, 1916; No. 1,191,495, dated July 18, 1916, and No. 1,231,494, dated July 26, 1917. They were sold to the plaintiff by George Claude and are widely employed in the United States for advertising signs and display business. Since the purchase by the plaintiff of these patents they have disposed of licenses to use them to various persons throughout the United States and the plaintiff and its licensees have conducted approximately sixty-five litigations in various parts of the United States against infringers of the aforesaid Claude patents, including the defendant Rainbow Light, Inc. Some of this litigation is still pending. The Rainbow Light, Inc., is and has been a vigorous competitor of the plaintiff. The Rainbow Luminous Products, Inc., is an allied company of the Rainbow Light, Inc. The defendant John F. Gilchrist is the president of the Federal Electric Company and the Claude Neon Federal Company. The defendant Federal Electric Company, Inc., is also a domestic corporation. Prior to the making of the agreement hereinafter described, it was engaged in the business of manufacturing and selling electrical products and one of the largest factors in its business was the manufacture and sale of display signs. During the latter part of 1926 and the early part of 1927 negotiations were begun by the plaintiff, through its president and vice-president, with the defendant Federal Electric Company. After six or eight months of negotiations an agreement was entered into in which it was agreed to form the Claude Neon Federal Company, Inc. The Federal Electric Company obtained two-thirds, and the Claude Neon Lights, Inc., one-third of the stock.

The agreement, after providing for the formation of the company, the granting by the plaintiff to the new company of the exclusive right and license to the Claude processes, in specific territory, and the full payment to the plaintiff for such license by giving it one-third of the stock of the new company, contained the following provision: " The parties hereto agree that neither party, without the consent of the other party, will sell or otherwise part with control of the shares of preferred stock and common stock of the New Company acquired by them respectively under the provisions of this agreement until the net earnings of the New Company, available for dividends on the common stock, shall in the aggregate be not less than Ten Dollars ($10) per share for all the common

stock then outstanding, *but in no event shall the restrictions upon the transfer of shares of stock in this Section contained continue in force beyond June 30, 1929.*"

Claude Neon Lights by virtue of its patent rights had a legal monopoly for the whole country. Federal Electric wanted a license for specific territory. It obtained such a license, and instead of royalties the plaintiff took in payment for such license one-third of the stock of the new company.

Pursuant to the agreement the new company was organized under the name of Claude Neon Federal Company. One-third of the original issue of 10,000 shares of preferred stock and 20,000 shares of common stock was delivered to the plaintiff. The balance was issued to the Federal Electric Company, Inc. The license was then given to the new company. The new company operated until June 30, 1929, without any friction between the plaintiff and the Federal Electric Company. In August, 1929, the Federal Electric Company, Inc., decided to sell its shares of stock in the new company to the defendant Rainbow Luminous Products, Inc., and thus precipitated the present litigation.

The plaintiff, in support of its position on this motion, urges strenuously that it and the Federal Electric Company were coadventurers in the forming of the Claude Neon Federal Company and that as a coadventurer the Federal Electric Company was subject to fiduciary duties akin to those arising from a copartnership. With this contention the court disagrees.

The court fails to see where this was a joint adventure. The Federal Electric Company, Inc., as it appears from the affidavit, was an independent company having an old established illuminating sign business in territory centering on Chicago, Ill., before it came into contact with Claude Neon Lights in the years 1926 and 1927. The annual report of the Federal Electric Company, Inc., to its stockholders in 1927 (Exhibit D) shows clearly how the parties came to deal with each other, namely: "Early in the year, your officers having watched for some time the experiments in the use of Neon gas filled tubes in the manufacture of electric signs, became convinced that a definite step should be taken to put your Company in a position to offer such signs to its customers * * * Claude Neon Lights, Inc., would not make a license arrangement and would only permit the use of its patents through a company in which it should retain an interest. Accordingly, after careful study, your officers arranged for the incorporation of a Delaware company to be known as the Claude Neon Federal Company, of which your Company (Federal Electric Company) owns two-thirds and Claude Neon Lights, Inc., owns one-third."

The formation of the new company placed the Federal Electric and plaintiff in the relationship of majority and minority stockholders with the reciprocal rights and duties growing out of the relationship, but it did not constitute them joint adventurers. It is fundamental that, no matter how the shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it.

If the plaintiff's contention that this was a joint adventure and a fiduciary relation existed between the parties is correct why did the Claude Neon Lights, Inc., refuse to enter into an arrangement to permit the use of its patents except to a company in which it should retain an interest? Why was it necessary under the agreement to form a Delaware company to be known as the Claude Neon Federal Company of which the Federal Electric was to own two-thirds and the Claude Neon Lights, Inc., holding one-third? This corroborates the fact that the relation existing between the parties was not a joint adventure but simply that of a buyer and seller with the purchase price to the plaintiff in the form of stock of the new company.

In *Jackson* v. *Hooper* (76 N. J. Eq. 592, 599) Chancellor DILL wrote as follows:

" The law never contemplated that persons engaged in business as partners may incorporate, with intent to obtain the advantages and immunities of a corporate form, and then, Proteus-like, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require.

" The policy of the law is to the contrary. If the parties have the rights of partners, they have the duties and liabilities imposed by law, and are responsible *in solido* to all creditors.

" If they adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners, and have only the rights, duties, and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world."

In *Drucklieb* v. *Harris* (209 N. Y. 211, 216) the court said: " Persons forming a corporation thereby gain many immunities and privileges of which they are not possessed as members of a partnership. Their liability for the debts and obligations of the business is limited and the death of one of the members does not work a dissolution of the corporation as it does in the case of a partnership. For these privileges the parties have to pay a price. They have not the same unrestricted control and management of their enterprise as they would have as partners, nor is the right of a single party to the joint enterprise safeguarded either as against

the State or against the other parties in the case of a corporation as in the case of a partnership."

In stressing their contention of the existence of a fiduciary relationship between the majority and the minority stockholders, plaintiff cites the case of *Meinhard* v. *Salmon* (249 N. Y. 458) in which the court said: " Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions (*Wendt* v. *Fischer,* 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

While the principle enunciated in the *Meinhard* case is unquestioned, the plaintiff has failed to establish the fact that the agreement between the Federal Electric and Claude Neon Lights was a joint adventure, and even assuming that it was a joint adventure, it is probable that the duties under the joint adventure are bounded by the limitations established by the terms of the contract.

In *Jones* v. *Walker* (51 Misc. 624) the court quoted from *Ross* v. *Willet* (76 Hun, 211) as follows: " A joint adventure is a limited partnership, not limited in a statutory sense as to liability but as to scope and duration, and, under our law, joint adventures and partnerships are governed by the same rules." So, in this case if a joint adventure existed it was one where it was to be carried out for profit of the business of the licensee company. The scope of the joint adventure would necessarily be limited to the territory covered by the licensee company's license. Analyzing further the *Meinhard* case, upon which the plaintiff relies, that was a case in which the subject-matter of the joint adventure was dealt with by one of the parties to the detriment of the other *while the joint adventure was still continuing.* The statement in the court's opinion that in that case a higher duty of good faith was owed by one joint adventurer to another merely restates settled principles, and the decision turns on the fact that the adventure was still continuing when one of the parties, without consulting the other,

dealt with the landlord for a new lease of the premises and running to himself alone. The same principle was particularly enunciated in *King* v. *Barnes* (109 N. Y. 267). Even conceding that a fiduciary relation once existed the court is confronted with the proposition that a written agreement was entered into on June 1, 1927, which limits its terms. It provides specifically that there shall be a fixed date after which each party shall be free to go his own way with regard to sale of his stock.

Clause 11 of the said contract is clear, distinct and unequivocal in stating that after June 30, 1929, all restrictions for the transfer of the stock of either of the parties to said agreement shall be removed. It must be presumed that the parties to this contract employed the usual language in the making thereof which would clearly define their entire intent. *A court of equity interprets a contract but does not rewrite it*, and if it finds in a contract a definitely ascertainable time limit to a sale of stock, it will give effect to the provisions strictly in accordance with those terms. Therefore, the court exercising that caution which is required when one is seeking injunctive relief is constrained to deny the motion for a temporary injunction and to vacate the stay. The motion to reduce the amount of the bond theretofore filed is also denied. The motion made by the Claude Neon Federal Company to dismiss the complaint as to it because of lack of jurisdiction is granted upon consent of all parties.