[Civ. No. 41479. Second Dist., Div. Five. Dec. 21, 1973.]

CHARLES W. LEWSADDER, Plaintiff and Respondent, v.
MITCHUM, JONES & TEMPLETON, INC., et al.,
Defendants and Appellants.

### Counsel

Schwartz & Alschuler, Irving L. Halpern, Frank M. Kaplan and Marshall B. Grossman for Defendants and Appellants.

Wetherbee & MacLaughlin, Kennett M. Patrick and William M. Mac Laughlin for Plaintiff and Respondent.

### Opinion

**HASTINGS, J.**—This is an appeal by Mitchum, Jones & Templeton, Inc., (Mitchum) and Jay Mintz (Mintz), a vice president of Mitchum, from an order denying their petition to compel Charles Lewsadder (Lewsadder)

to submit to arbitration the controversies set forth in his complaint in the Los Angeles Superior Court and to stay the superior court action pending such arbitration.

## FACTS

On September 1, 1970, before becoming a registered representative for Mitchum, Lewsadder executed a New York Stock Exchange "Application for Approval of Employment," which the exchange requires to be completed by any member organization which intends to hire an individual as a registered representative. Paragraph 31 of said application provides: "Further, and in consideration of the New York Stock Exchange's approving this application, I submit myself to the jurisdiction of such Exchange, and I agree as follows: . . . (j) I agree that *any controversy* between me and any member or member organization or affiliate or subsidiary thereof *arising out of my employment* or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange." (Italics added.)

On September 10, 1970, Lewsadder commenced employment with Mitchum, a member organization of the New York Stock Exchange (NYSE), and remained with that brokerage firm until December 1970. During that time, Lewsadder was also the president and manager of Incentive Group, Inc., a company which was the investment adviser for Incentive Fund, Inc., a mutual fund.

On February 1, 1972, Lewsadder filed a complaint in the Los Angeles Superior Court against Mitchum and Mintz. The first cause of action, against Mitchum only, alleges that on September 10, 1970, Mitchum requested Lewsadder to place the mutual fund's brokerage business with Mitchum, using a house account. At that time, Lewsadder and Mitchum understood that Lewsadder could neither share in the commissions nor derive any benefit from the fund's brokerage business. Believing that this arrangement could be beneficial to the fund, Lewsadder advised Mitchum that he would consider the arrangement if it were not improper and if it were approved by the law firm of O'Melveny & Myers. On September 16, 1970, Mitchum told Lewsadder that "the proposed arrangement was lawful and proper and that [they] had obtained approval" of said law firm. It is further alleged that, in fact, the arrangement violated S.E.C. regulations and had not been approved by O'Melveny & Myers. As a result of Mitchum's representations, Lewsadder placed the fund's brokerage business with Mitchum during the period between September

16, 1970 and October 1, 1970. As a consequence, an action was filed by the S.E.C. against Lewsadder, resulting in adverse publicity and damage to his reputation.

The second cause of action alleges a claim for negligent misrepresentation against Mitchum alone.

The third cause of action, against both Mitchum and Mintz, alleges that a letter written by them to the S.E.C. concerning Lewsadder's activities with the fund's brokerage business was libelous.

In response to the complaint, Mitchum and Mintz petitioned the court to order arbitration of the issues raised by the complaint and to stay all proceedings in this action pending completion of the arbitration. The court denied the petition[1] and this appeal followed.[2]

## ISSUES

■ Appellants claim that since the intentional torts of fraud and libel, as set forth in Lewsadder's complaint, are (1) included within their arbitration agreement under the provision "any controversy . . ." and (2) arose "out of [Lewsadder's] employment" as a registered representative with Mitchum, these controversies are subject to arbitration under the arbitration agreement.

Code of Civil Procedure section 1281.2 provides in pertinent part that: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

---

[1] In its minute order of June 15, 1972, the trial court stated its reasons for denial of the petition as follows: "The intentional torts of fraud and libel alleged in the complaint are not included within the arbitration clause which covers 'any controversy . . . arising out of my employment.' Defendant Mintz is not a 'member' includable within the contract and arbitration clause. The alleged libel took place several months after plaintiff's employment terminated."

[2] Appellants appeal from this order only to the extent that it precludes arbitration between Lewsadder and Mitchum. They do not challenge the portion of the order declaring that Mintz was not a "member" of the exchange includable within the contract and arbitration clause. However, they have requested that if the controversies raised in Lewsadder's complaint must be arbitrated, a further order staying all superior court proceedings be issued pending the conclusion of the arbitration.

"(a) The right to compel arbitration has been waived by the petitioner; or

"(b) Grounds exist for the revocation of the agreement. . . ."

█ Since it has long been the policy in California to favor arbitration as a means of providing a summary disposition of controversies, every intendment will be indulged to give effect to such proceedings. (*Sanserino* v. *Shamberger,* 245 Cal.App.2d 630, 635 [54 Cal.Rptr. 206]; *Myers* v. *Richfield Oil Corp.,* 98 Cal.App.2d 667, 671 [220 P.2d 973].)

█ Lewsadder concedes that there has been no waiver or revocation in the present case. Further, he agrees, as the courts have held, that torts are arbitrable, provided that the underlying agreement embraces the disputed matter. (*Legg, Mason & Company, Inc.* v. *Mackall & Coe, Inc.,* 351 F.Supp. 1367, 1370-1371.)

The arbitration agreement existing between Mitchum and Lewsadder provides that *"any* controversy . . . arising out of [Lewsadder's] employment" shall be arbitrable. The term "controversy" is defined in section 1280, subdivision (c), of the Code of Civil Procedure as *"any question* arising between parties to an agreement whether such question is one of law or of fact or both." (Italics added.) While it is true that the intentional torts of libel and fraud are not associated with arbitration, there is no restriction on an agreement to do so. Thus, this agreement, extending arbitration to *any* controversy, is sufficiently broad to include tort, as well as contractual, liabilities. (See *Osborne & Thurlow* v. *Hirsch & Co.,* 10 Misc.2d 225 [172 N.Y.S.2d 522, 523]; *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 182 [260 P.2d 156].)

Lewsadder asserts that the controversies alleged in his complaint did not arise out of his association with Mitchum as an employee, but instead stemmed from his position as president and manager of the fund. This contention, however, belies the allegations of his complaint. In his causes of action for fraud and negligent misrepresentation (counts I and II) against Mitchum, he alleges: "On or about September 10, 1970, defendant M.J.T. [Mitchum] requested plaintiff to place brokerage business of the Fund with M.J.T. using a house account in which plaintiff would have no interest or from which he would derive no benefit. At the time it was known and understood by both plaintiff and defendant M.J.T. that plaintiff could not share in the commissions or derive any benefit from brokerage business of the Fund. Plaintiff believed that it would be beneficial to the Fund if the brokerage could be handled in the same office where he was employed,

and advised defendant that he would consider such arrangement if it were not improper and if it were approved by the law firm of O'Melveny & Myers." And, further, that: "At the time it made said representations, defendant possessed, and assumed to possess, superior knowledge and special information regarding the subject matter, and plaintiff was so situated that he reasonably relied on such supposed superior knowledge and special information. Further, a confidential and fiduciary relationship existed at the time between plaintiff and defendant, and plaintiff placed trust and confidence in defendant."

It appears that Lewsadder's principal contention is that he was induced, through Mitchum's misrepresentations, to engage in a business transaction which, *because* of his status as an employee of Mitchum, was illegal and which thereby subjected him to prosecution by the S.E.C.

On January 19, 1973, in granting a motion to submit a controversy to arbitration, the United States District Court, Eastern District of Pennsylvania, stated in *Ayres* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 1084, 1091, as follows: "In being employed as a registered representative, the plaintiff pursuant to [NYSE] Rule 347(b)[3] has assented to arbitrate all disputes between himself and members of the Exchange which arise out of his employment or the termination of that employment. I find that where you have a registered representative who purchases securities from an employer-member firm *solely* because of his status as an employee, then that transaction is one which arises out of the course of that employment and can be referred to arbitration under Rule 347(b) and § 28(b)(2) of the 1934 Act, even though the controversy would otherwise not touch upon or concern the performance of the plaintiff's duties as a registered representative *qua* registered representative and the plaintiff's position would be analogous to that of a public investor."

Here, there is nothing in the record which would indicate that, in the absence of his employment relationship, Lewsadder would have been prosecuted by the S.E.C. In fact, the contrary appears to be true; if Lewsadder had not been employed by Mitchum as a registered representative, there would have been nothing improper in his transfer of the fund's business to Mitchum.

---

[3]NYSE Rule 347(b) *stated:* "(b) *Any controversy between a registered representative and any member organization arising out of the employment or termination of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party in accordance with the arbitration procedure prescribed elsewhere in these rules.*"

The third cause of action also concerns Lewsadder's employment with Mitchum. The libel is allegedly contained in a letter written by Mintz to the S.E.C. concerning Lewsadder's activities while an employee and charging him with numerous improprieties in connection with his employment. The fact that this letter was written after Lewsadder terminated his employment with Mitchum does not preclude the arbitrability of his claim. (Cf. *Isaacson* v. *Hayden, Stone Incorporated*, 319 F.Supp. 929, 930.) Thus, the controversies alleged in counts I through III of Lewsadder's complaint arose out of his employment.

Since Lewsadder's only claim against Mintz is that of libel which is against both Mitchum and Mintz, jointly and severally (count III), there is no contention that either Mitchum or Mintz acted independently of each other. In fact, in paragraph 4 of his complaint, Lewsadder alleges that Mintz "was an officer and agent of defendant M.J.T. and was acting within the course and scope of said agency and employment." This cause of action against Mitchum is clearly arbitrable, and this action should be stayed pending completion of arbitration. (See Code Civ. Proc., § 1281.4; *Cook* v. *Superior Court*, 240 Cal.App.2d 880, 885 [50 Cal.Rptr. 81].)

The order is reversed with directions to enter an order directing the parties to proceed to arbitration in accordance with the terms of the agreement; and pending the completion of such arbitration, any other proceedings in this action are stayed.

Kaus, P. J., and Ashby, J., concurred.