[Civ. No. 43953. Second Dist., Div. Two. Jan. 30, 1975.]

JACK BERMAN et al., Plaintiffs and Respondents, v.
DEAN WITTER & CO., INC., et al., Defendants and Appellants.

**COUNSEL**

Stephens, Jones, La Fever & Smith, Eugene W. Bell and Michael J. Abbott for Defendants and Appellants.

Robert M. Aran for Plaintiffs and Respondents.

**OPINION**

**COMPTON, J.**—Defendants Dean Witter & Co. (Witter) and Norman Sobel (Sobel) appeal from an order[1] denying their petition to compel arbitration and to stay proceedings in the action brought against them by plaintiffs Jack and Leona Berman.

Plaintiffs who are husband and wife commenced this action with the filing of a complaint captioned "Complaint for Negligence; Complaint for a Breach of a Fiduciary Relationship" which alleged that Leona Berman maintained an account with Witter, a securities broker, and that on May 16, 1972, Jack Berman purchased on margin for Leona's account five short-term future contracts for Japanese yen. The order and purchase were handled by Sobel as agent of Witter.

The complaint further alleges that Witter and Sobel acquired the future contracts at a grossly excessive price and negligently concealed from plaintiffs certain market information and the fact that Witter and Sobel were inexperienced in the currency market. As a result of relying on Sobel and Witter's advice, plaintiffs suffered a financial loss which they would not have suffered but for such advice.

Defendants simultaneously answered, denying their liability, and petitioned to compel arbitration. The latter petition was based on a written customer agreement between Witter and Leona, which agreement provided in part as follows:

"In consideration of your accepting one or more accounts of the undersigned [Leona] (whether designated by name, number or otherwise) and your agreeing to act as brokers for the undersigned in the

---

[1]Although the notice of appeal erroneously denominates the order as a judgment, we disregard the defect since there is no question as to what order this appeal is taken and plaintiffs have not been misled or prejudiced. (*Vallis* v. *Canada Dry Ginger Ale, Inc.* 190 Cal.App.2d 35 [11 Cal.Rptr. 823].)

purchase or sale of securities or commodities, the undersigned agrees as follows:

" . . . . . . . . . . . . . . . .

"4. All *monies, securities, commodities or other property* which you may at any time be carrying for the undersigned . . . shall be subject to a general lien for the discharge of all obligations of the undersigned to you, . . .

"5. All *securities and commodities or any other property,* now or hereafter held by you, or carried by you for the undersigned (either individually or jointly with others) or deposited to secure the same, may from time to time and without notice to me, be carried in your general loans and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other *securities and commodities or any other property,* for the sum due to you thereon or for a greater sum and without 'retaining in your possession and control for delivery a like amount of similar securities or commodities.

" . . . . . . . . . . . .. . . . . .

"13. In all transactions between you and the undersigned . . . you are acting as the brokers of the undersigned . . . .

" . . . . . . . . . . . . . . . .

"16. Any controversy between [Witter and Leona] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, . . . ." (Italics added.)

This customer's agreement establishing Leona's account with Witter was necessitated by the fact that Leona desired to transact business with Witter on "margin" and as noted the transactions in question here were "margin" purchases.

In opposing defendants' petition for arbitration, plaintiffs advanced three reasons why the instant action falls outside the ambit of the arbitration provision of the contract: (1) that the action sounds in tort, (2) that neither Sobel nor Jack are signatories to the contract, and (3) that the contract is applicable only to transactions in "securities" or "commodities" and currency futures are neither of these.

The trial court based on a stipulated set of facts purported to make "findings of fact" to the effect that (1) Japanese yen futures are not securities or commodities, and (2) that plaintiffs had not agreed in writing to arbitrate the controversy which is the subject of this law suit. Based on these "findings" the trial court denied the petition for arbitration.

The trial court was not presented with any factual issues to resolve. The purported "findings" are conclusions of law and we are not bound by those "findings" in determining whether the order should be upheld. We are free to make our own independent interpretation of the terms of the contract and its application to the instant dispute. (*Estate of Shannon,* 231 Cal.App.2d 886 [42 Cal.Rptr. 278]; *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

Although the contract contains a provision that its enforcement shall be governed by New York law, plaintiffs have blown hot and cold as to whether they wish New York or California law to be applied. In any event, it appears that whichever law is applied the result is the same since in all material aspects the law of both jurisdictions is the same.

In New York, as well as in California, arbitration is highly favored as a method for the settlement of disputes. (New York's Civil Practice Law & Rules, §§ 3031, 7501; *Matter of Kelley,* 240 N.Y. 74, 79 [147 N.E. 363]; *Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N.Y. 284, 298 [169 N.E. 386]; Eager, The Arbitration Contract and Proceedings, § 2, pp. 3-4; Domke, The Law and Practice of Commercial Arbitration, § 1.03; also see *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42,* 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397]; *Player* v. *Geo. M. Brewster & Son, Inc.,* 18 Cal.App.3d 526 [96 Cal.Rptr. 149].)

■ The phrase "any controversy . . . arising out of or relating to this contract . . ." is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract. (Compare: *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156 [260 P.2d 156]; *Lewsadder* v. *Mitchum, Jones & Templeton, Inc.,* 36 Cal.App.3d 255 [111 Cal.Rptr. 405].)

Clearly, when Jack undertook to order the margin purchases of currency futures on the established account which Leona maintained with Witter, such purchases arose out of and were related to the customer agreement. Thus it follows that any dispute concerning those purchases arose out of and were related to the agreement.

██ Sobel and Jack Berman though not signatories to the agreement were both acting as agents for the signatories. Sobel is as entitled to the benefit of arbitration as is his principal Witter. (*Starr* v. *O'Rourke,* 5 Misc.2d 646 [159 N.Y.S.2d 60]; Rest.2d Agency, §§ 327, 334; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595 [111 P.2d 346].) Jack on the other hand is not entitled to any greater right than his principal Leona. (Rest.2d Agency, § 375; also see *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20 Cal.App.3d 668 [97 Cal.Rptr. 811].)

██ Plaintiffs major contention is that the contract is not applicable to the present controversy for the reason that futures contracts in foreign currency are not "securities" or "commodities" and that the contract cannot be interpreted as embracing such transactions.

We look to the contract itself and interpret it so as to give effect to the intent of the contracting parties. (Civ. Code, §§ 1639, 1643; *Fox Film Corporation* v. *Springer,* 273 N.Y. 434 [8 N.E.2d 23].) The words of a contract are to be understood in their ordinary and popular sense, rather than their strict legal meaning unless used by the parties in a technical sense. (Civ. Code, § 1644; *Claude Neon Lights* v. *Federal Electric Co.,* 135 Misc. 113 [236 N.Y.S. 692]; McKinney Consolidated Laws of New York, Book 1, §§ 94, 231, 232.)

Plaintiffs argue that foreign currency or money is a medium of exchange and not a product of commerce and thus is not a commodity as that latter term is legally or technically defined. We disagree.

The term commodity is widely used in application to the trade in foreign currency. In the case at bar the medium of exchange was United States dollars, the items purchased were contracts for future purchase and sale of Japanese yen. In this context the foreign currency partakes of the character of tangible goods or commodities. It is noteworthy that the futures contracts here were executed on the Chicago Mercantile Commodities Exchange.

California Corporations Code section 29502 provides that " 'Commodity' means anything movable, including but not limited to metals, precious stones and gems and monetary units, that is bought and sold upon the basis of the public market quotations of prices made on any board of trade or exchange upon which commodities or commodity contracts are dealt."

Uniform Commercial Code section 2105 provides in part as follows:

"(1) 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action."

The official comments to that section state in part: "The exclusion of 'money in which the price is to be paid' from the definition of goods does not mean that foreign currency which is included in the definition of money may not be the subject matter of a sales transaction. Goods is intended to cover the sale of money when money is being treated as a commodity but not to include it when money is the medium of payment."

Further, New York law provides that "Commodity means any product of commerce." (New York General Business Law, Book 19, Art. XXIV-A, Fair Trade Law, § 369(d).) It is beyond question that foreign currency is itself a product of commerce when traded pursuant to futures contracts.

A futures contract in foreign currency is also embraced within the definition of "security" in both California and New York. New York Blue Sky Law, General Business Law, section 352, authorizes the attorney general to investigate fraudulent activities in connection with "foreign currency, orders, calls, or options therefore hereinafter called security or securities." In California a "security" is any "investment contract . . . or in general any interest or instrument commonly known as a 'security.' " (Corp. Code, § 25019.)

More important, however, we are of the opinion that as used in the contract at bench, the arbitration clause is not limited to disputes arising out of only those transactions which are technically defined as transactions in "securities" or "commodities." It seems clear to us that the parties intended that clause to apply to disputes arising out of transactions based upon the client-broker relationship which the contract established. (See *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Griesenbeck*, 28 App.Div.2d 99 [281 N.Y.S.2d 580]; cf. *Robinson* v. *Bache & Co.*, 227 F.Supp. 456; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.*)

The order denying defendants' petition for arbitration is reversed and the superior court is directed to issue its order compelling arbitration and staying all further proceedings in this case.

Fleming, Acting P. J., and Beach, J., concurred.