[Civ. No. 20735. Third Dist. Oct. 28, 1982.]

BOS MATERIAL HANDLING, INC., Plaintiff and Respondent, v. CROWN CONTROLS CORPORATION, Defendant and Appellant.

COUNSEL

Downey, Brand, Seymour & Rohwer, Stephen F. Boutin, Smith & Schnacke, Charles J. Faruki and John E. Tate for Defendant and Appellant.

Robert F. Koehler, Jr., for Plaintiff and Respondent.

OPINION

**REGAN, Acting P. J.**—Plaintiff Bos Material Handling, Inc., filed causes of action against defendant Crown Controls Corporation and others after Crown refused to renew its year-to-year dealer agreement with Bos. Crown petitioned

the court to stay the trial proceedings and to compel arbitration pursuant to an arbitration clause in the dealer agreement. The petition was denied on the ground that the causes of action stated in the Bos complaint were not within the arbitration provision of the dealer agreement. Crown appeals from the order denying arbitration. (Code Civ. Proc., § 1294, subd. (a).) We reverse and remand with instructions.

On May 24, 1972, Crown and Bos entered into a written dealer agreement under which Bos was to be an authorized dealer for Crown equipment, i.e., "forklift trucks." The dealer agreement ran for one year and could be renewed from year to year. The last one-year extension signed by both parties provided that the agreement was to expire on February 28, 1981. In a letter dated February 3, 1981, Crown notified Bos that it would not again renew the agreement but would defer expiration until March 31, 1981, if Bos so desired. Bos responded by a letter stating that the "cancellation" was "without just cause" and requested an extension of time. By written response, Crown extended the dealer agreement only until March 31, 1981.

The arbitration clause in the dealer agreement provided: "Any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration in Dayton, Ohio, in accordance with the rules of the American Arbitration Association then obtaining."

On March 24, 1981, Bos filed the underlying actions in the superior court. Although bearing tort labels, the complaint essentially alleges wrongful acts, initiated by Crown prior to the expiration of the agreement on March 31, 1981, which led to wrongful termination of the dealer agreement.

The first cause of the action alleges that Crown's unilateral termination of the agreement was a tortious breach of good faith and fair dealing. The second cause of action, based on a theory of interference with economic relations, also alleges Crown's wrongful termination of the dealership. The third is denominated fraud and alleges Crown wrongfully sought to transfer the dealership to a third party while orally representing to Bos that its dealership was secure. The fourth is for unfair competition and states that Crown intentionally terminated the dealer agreement for the purpose of putting Bos " 'out of business' " and "eliminating competition to its products . . . ." The fifth is a restraint of trade cause of action under the Cartwright Act and alleges that Crown negotiated, illegally conspired, and agreed with third parties to wrongfully and illegally terminate, without notice, Bos as Crown's dealer. The sixth cause of action, labelled intentional interference with prospective advantage and contract, alleges that, since the beginning of January 1981, Crown and third parties have wrongfully misrepresented to Bos' customers and potential

customers that these third parties are the dealer representatives of Crown's products.[1]

■ Since Bos did not introduce any extrinsic evidence as an aid in interpreting the meaning of the written dealer agreement, we are free to exercise our independent judgment in construing whether the arbitration clause applies to the instant controversy. (*Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc.* (1980) 111 Cal.App.3d 983, 987-988 [169 Cal.Rptr. 102]; *Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)[2]

The dealer agreement contains a provision that its construction shall be governed by Ohio law. However, it is unnecessary to address choice of law problems at this juncture since the result as to arbitrability would be the same in either jurisdiction. (See *Berman, supra,* 44 Cal.App.3d at p. 1003; *New Linen Supply* v. *Eastern Environmental Controls, Inc.* (1979) 96 Cal.App.3d 810, 817, fn. 2 [158 Cal.Rptr. 251].) Both California (*Doers* v. *Golden Gate etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261]) and Ohio (*Bellaire City Schools Bd. of Ed.* v. *Paxton* (1979) 59 Ohio St.2d 65 [13 Ohio Ops.3d 58, 391 N.E.2d 1021, 1024]; *Universal Underwriters Ins. Co.* v. *Shuff* (1981) 67 Ohio St.2d 172 [21 Ohio Ops.3d 108, 423, N.E.2d 417, 418-419]) embrace a judicial policy strongly in favor of enforcing arbitration contracts.

■ In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute. (*Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9-10 [129 Cal.Rptr. 489].) In the particular situation where contracts provide arbitration for " 'any controversy . . . arising out of or relating to the contract . . .' " the courts have held such arbitration agreements sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims "have their roots in the relationship between the parties which was created by the contract." (*Berman, supra,* 44 Cal.App.3d at p. 1003; see also *Lewsadder* v. *Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255,

---

[1]Pending this appeal, Bos moved in the superior court to file a first amended complaint specifically naming Tenco, Inc., as a third party. The motion was denied without prejudice to renew after disposition on appeal. We have denied Bos' motion to take judicial notice of the amended complaint and have struck such documents from the record on appeal. The contents of the amended complaint have no bearing on the validity of trial court's prior ruling. (See Code Civ. Proc., § 1281.2, subd. (c); 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 220, pp. 4210-4211.)

[2]Because of our resolution of the arbitrability issue in favor of Crown, it is unnecessary to consider the extrinsic evidence introduced by Crown regarding the meaning of the arbitration provision.

259 [111 Cal.Rptr. 405]; *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 182 [260 P.2d 156].)

■ Here, the Bos complaint clearly has its genesis in the contractual relationship. Although cast in terms of tort, it focuses on Crown's unilateral termination of the dealership as the conduct which is wrongful; the dealer agreement has specific provisions controlling termination and extension. Standing alone, the alleged parol representations by Crown do not serve to place the complaint outside the scope of the arbitration provision since those representations occurred during the time period when the agreement was in effect, not thereafter. (See *Becker Autoradio* v. *Becker Autoradiowerk GmbH* (3d Cir. 1978) 585 F.2d 39, 44.) In sum, we view the dispute centering on the "wrongful" termination or expiration of the dealer contract to be properly arbitrable under its broad arbitration provision, particularly since the contract has specific provisions relating to extension and termination. (See, *id.*, pp. 46-47; *New Linen Supply, supra,* 96 Cal.App.3d 810.) To hold otherwise would enable a party to frustrate any agreement to arbitrate simply by changing the manner or form in which it frames its claims. (See *In re Oil Spill By Amoco Cadiz, etc.* (7th Cir. 1981) 659 F.2d 789, 794; *Atshul Stern & Co., Inc.* v. *Mitsui Bussan Kaisha, Ltd.* (2d Cir. 1967) 385 F.2d 158, 159.)

Unavailing is Bos' attempt to rely on language in *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal. Rptr. 477, 535 P.2d 341]. *Freeman* merely expresses the basic precept that: "There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." The intent or mutual assent of contracting parties is governed by an objective, not subjective, standard. (See generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 88, pp. 92-93.) As we have discussed, the broad language of the arbitration provision here supports a reasonable inference that the parties agreed to arbitrate all controversies, including tort claims, arising out of their contractual relationship.

Bos also unsuccessfully attempts to distinguish the *Berman-Lewsadder-Crofoot* line of cases on the basis they involved brokerage disputes within a self-regulating industry. The fact that the securities industry is self-regulating does not affect the precedential authority of such cases interpreting " 'any controversy . . . arising out of . . .' " language in an arbitration agreement to encompass tort claims. (See *Berman, supra,* 44 Cal.App.3d at p. 1003.)

However, our conclusion that the agreement to arbitrate embraces the instant controversy does not end our inquiry. In opposition to the petition to compel arbitration, Bos also argued that the arbitration provision is not enforceable on adhesion grounds, that the antitrust action under the Cartwright Act is not sub-

ject to arbitration, and that the existence of third party claims renders the controversy nonarbitrable. In the interest of judicial economy, we turn to these remaining issues for the guidance of the trial court.

*Adhesion*

A " 'contract of adhesion' " is a " '. . . standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165], quoting *Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 680, 694 [10 Cal.Rptr. 781]; see also *Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 593 [183 Cal.Rptr. 360, 645 P.2d 1192].) Although most adhesive contracts occur in a consumer context, they also are found in a commercial setting as between businessmen of unequal bargaining strength. (*Graham, supra,* 28 Cal.3d at pp. 817-818.)

Here, it is undisputed that the dealer agreement was a standardized form contract. In opposition to Crown's petition to compel arbitration, Bos also cited deposition testimony that the agreement was " 'probably read' " without benefit of an attorney, was not " 'openly and fairly' " entered, and was presented on a "take-it-or-leave-it" basis. The proffer of such evidence was sufficient to raise questions of fact concerning the adhesiveness of the agreement containing the arbitration provision.

The determination that a contract is adhesive, however, does not necessarily mean that an arbitration provision contained therein is unenforceable. "To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, 'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' [Citation.] ■ Thus, a contract of adhesion is fully enforceable according to its terms [citations] unless certain other factors are present which under established legal rules—legislative or judicial—operate to render it otherwise." (*Graham, supra,* 28 Cal.3d at pp. 819-820, fns. omitted.) "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' " (*Id.,* at p. 820; see also *Keating, supra,* 31 Cal.3d at p. 594; *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 152-153 [175 Cal.Rptr. 851].)

Arbitration provisions in the setting of contracts of adhesion were considered recently by our Supreme Court in *Keating* and *Graham*. ■ Said the court in *Keating*: "In the absence of some special element of unfair advantage, . . . arbitration is generally considered to be a mutually advantageous process, providing for resolution of disputes in a presumptively less costly, more expeditious, and more private manner by an impartial person or persons typically selected by the parties themselves. [Citation.] For these reasons, the fact that provision for arbitration is contained in a contract of adhesion will not, of itself, render the provision unenforceable." (31 Cal.3d at p. 595, citing *Graham, supra,* 28 Cal.3d at pp. 819-820.)

■ Here, we may readily conclude as a matter of law that the contractual provision requiring arbitration is neither contrary to the reasonable expectations of Bos nor so unfair as to be unconscionable. Particularly in a commercial context, such a reading is in keeping with the reasonable expectations of the contracting parties. (*Keating, supra,* 31 Cal.3d at p. 595.) However, the additional contractual provisions selecting Ohio as the forum for arbitration and choosing Ohio law as controlling the legal relations between the parties may be "special element[s] of unfair advantage" (*ibid.*) rendering these additional provisions unenforceable.

■ Generally speaking, "forum selection clauses are valid and may be given effect . . . in the absence of a showing that enforcement of such a clause would be unreasonable" (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206]) or a showing of "over-weening bargaining power" (*The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 13 [32 L.Ed.2d 513, 522, 92 S.Ct. 1907]). Choice-of-law provisions also are given effect where the transaction bears a "reasonable relation" to the chosen state. (Cal. U. Com. Code, § 1105, subd. (1); see generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 61, pp. 68-70.) And merely because a choice-of-law, or forum-selection, provision is contained in a contract of adhesion does not render the provision unenforceable on policy grounds as a matter of law. (See *Gamer* v. *DuPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287 [135 Cal.Rptr. 230]; *Windsor Mills, Inc.* v. *Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 995, fn. 6 [101 Cal.Rptr. 347]; see also Rest.2d Conf. of Laws, § 187, com. b.) Nevertheless, the courts "scrutinize such contracts with care" and refuse to honor the selection "if to do so would result in substantial injustice to the adherent." (Rest.2d Conf. of Laws, § 187, com. b.) ■ On remand, Bos is entitled to an evidentiary hearing on whether the dealer agreement is adhesive and, if so, whether the Ohio forum comports with the reasonable expectations of Bos or is unduly oppressive. (See similarly *New Linen Supply, supra,* 96 Cal.App.3d at pp. 817-819.)

*Antitrust Claims*

■ The Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) is California's antitrust law patterned after the federal Sherman Act. (*Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833].) Bos has alleged a cause of action based on Cartwright Act violations. (See Bus. & Prof. Code, § 16750, subd. (a).) ■ The question we confront—whether the statutory rights under the state antitrust law are of a character inappropriate for enforcement by arbitration—is one of first impression in California.

Initially, there is a choice-of-law problem since, as we have seen, the dealer agreement stipulated that Ohio law would govern the legal relations between the parties. Crown argues that such contractual provision requires this court to apply Ohio law in determining the arbitrability of the antitrust claim and cites a decision by Ohio's highest court as standing for the proposition that an antitrust claim may be arbitrated under Ohio law. Its reliance is misplaced. *Campbell* v. *Automatic Die & Products Co.* (1954) 162 Ohio St. 321 [123 N.E.2d 401, 405], held that a party is *estopped* from raising a federal antitrust claim in a judicial proceeding after final resolution of that issue by arbitration. An estoppel theory has no bearing on the arbitrability of an antitrust claim prior to any resolution of the dispute; in addition, the antitrust claim in *Campbell* was brought under federal instead of Ohio law. Hence, the arbitrability of an antitrust claim under state law presents a case of first impression in both Ohio and California. In the absence of any Ohio law on point and in view of the possible justification for not enforcing the choice-of-law provision on adhesion grounds, we shall restrict our examination of the proper forum for resolving the antitrust claim to public policy considerations underlying our own Cartwright Act. (See *Gamer* v. *DuPont Glore Forgan, Inc., supra,* 65 Cal.App.3d at p. 287.)

■ Because the Cartwright Act is modeled after the Sherman Act, federal cases interpreting the federal law are applicable to problems arising under the state act. (*Marin County Bd. of Realtors, Inc.* v. *Palsson, supra,* 16 Cal.3d at p. 925; see also *Keating, supra,* 31 Cal.3d at p. 598.) ■ Confronted by situations in which an agreement is claimed to be the instrument of an antitrust violation, the federal courts uniformly have held that private parties cannot agree to arbitrate such claims under the Sherman Act. (*American Safety Equipment Corp.* v. *J. P. Maguire & Co.* (2d Cir. 1968) 391 F.2d 821, 827; *A. & E. Plastik Pak Co.* v. *Monsanto Company* (9th Cir. 1968) 396 F.2d 710, 715-716; *Power Replacements, Inc.* v. *Air Preheater Co.* (9th Cir. 1970) 426 F.2d 980, 983-984.)

The court in *American Safety Equipment* relied heavily on precedent established in the United States Supreme Court decision of *Wilko* v. *Swan* (1953) 346 U.S. 427 [98 L.Ed. 168, 74 S.Ct. 182], which held controversies under the federal Securities Act inappropriate for enforcement by arbitration. (*American Safety, supra,* 391 F.2d at p. 825.) Drawing analogies to the statute under scrutiny in *Wilko,* the *American Safety* court identified a "clash of competing fundamental policies" in dealing with the arbitrability of federal antitrust claims. (*Id.* at p. 826.) The clash was ". . . between federal statutory protection of a large segment of the public, frequently in an inferior bargaining position, and encouragement of arbitration as a 'prompt, economical and adequate solution of controversies.' " (*Ibid.*) Finding the policies in favor of nonarbitrability paramount, the court reasoned: "A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest. [Citations.] . . . [¶] [I]n addition, the issues in antitrust cases are prone to be complicated, and the evidence extensive and diverse, far better suited to judicial than to arbitration procedures. Moreover, it is the business community generally that is regulated by the antitrust laws. Since commercial arbitrators are frequently men drawn for their business expertise, it hardly seems proper for them to determine these issues of great public interest. . . ." (*Id.,* at pp. 826-827; see also *Power Replacements, Inc.* v. *Air Preheater Co., supra,* 426 F.2d at pp. 983-984.)

Other jurisdictions also have considered the appropriateness of arbitration as a forum for resolving antitrust claims brought under state law. The landmark decision of *Aimcee Wholesale Corp.* v. *Tomar Products, Inc.* (1968) 21 N.Y.2d 621 [289 N.Y.S.2d 968, 237 N.E.2d 223], is particularly instructive here. Noting the "public policy of the first magnitude" represented by New York's antitrust law (*id.,* at p. 224) and reviewing, inter alia, the penal sanctions included in the law (*ibid.*), the public role accorded the attorney general to investigate and prosecute antitrust violations (*id.,* at pp. 224, 226), and the fact that arbitrators are neither bound by rules of law nor obliged to give reasons for their rulings (*id.,* at p. 225), the court in *Aimcee* determined that the "courts cannot abdicate their control over antitrust policy" by allowing such matters to be resolved by privately appointed arbitrators via broad arbitration agreements (*id.,* at p. 227). Said the court: "[I]t must be recognized that through the use of economic power and contracts of adhesion, containing broad arbitration clauses, antitrust violators may be able to insulate their transgressions of antitrust law from judicial scrutiny. The opportunity for abuse is apparent. Under various guises, an industry, while nominally assuring obedience to the State's

antitrust law, may in reality be establishing and enforcing entirely unacceptable practices." (*Ibid.*)[3]

Similarly, the Cartwright Act under review here is a regulatory statute containing penal sanctions (Bus. & Prof. Code, § 16804), which is designed to protect an identical interest of society—the preservation of free and unfettered economic competition. (*Aimcee Wholesale Corp.*, *supra*, 237 N.E.2d at p. 225, quoting *Northern Pac. R. Co.* v. *United States* (1958) 356 U.S. 1, 4 [2 L.Ed.2d 545, 549, 78 S.Ct. 514].) The fundamental policy reasons precluding arbitration of antitrust claims in other jurisdictions are equally as persuasive under the California Act. Accordingly, we follow the mainstream of judicial thought in concluding that the parties here cannot agree privately to exclude antitrust issues under the Cartwright Act from judicial scrutiny and determination.[4]

We find support for our conclusion in *Keating, supra,* 31 Cal.3d at pages 594-604. *Keating* considered the arbitrability of claims made pursuant to the California Franchise Investment Law (Corp. Code, § 31000 et seq.). Relying on *Wilko* v. *Swan, supra,* 346 U.S. 427 [98 L.Ed. 168], in construing "nearly identical language" under the protective provisions of the federal Securities Act and the state Franchise Investment Law and in considering the limited nature of judicial review following arbitration of issues governed by both federal and state statutes, the court in *Keating* determined that the regulatory provisions under the state statute should be assigned only to judicial enforcement and not to private arbitration as well. (31 Cal.3d at pp. 596-599, 604.)

The question remains as to the proper procedure for handling the various claims relegated to separate forums for resolution. While the Cartwright Act claim is not subject to arbitration, it can hardly be characterized as one in which Bos has a strong likelihood of prevailing. Indeed, the antitrust claim is ancillary to causes of action based on Crown's wrongful termination of the dealer agreement. It is thus appropriate for the trial court to stay proceedings on the antitrust claim pending arbitration of the other controversies arising out of or relating to the dealer agreement. (See *A. & E. Plastik Pak Co.,*

---

[3]Relying on the federal and New York precedents, the states of New Mexico and Washington also have held issues raised under state antitrust law are not subject to arbitration. (*United Nuclear Corp.* v. *General Atomic Co.* (1979) 93 N.M. 105 [597 P.2d 290, 309-312]; *Wineland* v. *Marketex Intern., Inc.* (1981) 28 Wn.App. 830 [627 P.2d 967].)

[4]We reject Crown's attempt to limit the applicability of the federal cases to the situation where the validity of a contract is challenged under the antitrust laws. The case for nonarbitration is more compelling where, as here, the alleged antitrust violation concerns anticompetitive activity independent of the validity of a contract containing an arbitration provision yet the enforceability of the contract is challenged on adhesion grounds. (See *American Safety Equipment Corp.* v. *J. P. Maguire & Co., supra,* 391 F.2d at p. 827.)

*supra*, 396 F.2d at p. 716; cf. *Varo* v. *Comprehensive Designers, Inc.* (9th Cir. 1974) 504 F.2d 1103, 1104.)

*Third Party Contentions*

Where a court determines that an agreement to arbitrate a controversy exists, Code of Civil Procedure section 1281.2 directs the court to order arbitration unless it determines, inter alia, that: "A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Subd. (c).)

Bos maintains that the existence of claims against third parties not privy to the dealer agreement precludes arbitration of the controversy at hand. After the ruling on the petition to arbitrate, Bos has attempted to substitute by amendment Tenco for an unnamed third party "Doe" in the original complaint. The attempted substitution is not appropriate for our judicial notice, because a pending court action or special proceeding as defined under section 1281.2, subdivision (c), does not include an action or proceeding initiated by the party refusing to arbitrate after the date of the hearing on the petition. Accordingly, our review is limited to the claims against third parties existing at the time of the trial court ruling.

Here, the mere inclusion of unnamed third party "Does" in the fifth and sixth causes of action is insufficient grounds to deny enforcement of the arbitration agreement. Indeed, the fifth action is the antitrust complaint and is excluded from arbitration by our holding today. The remaining action alleging that third parties intentionally interfered with prospective business advantage clearly is ancillary to the causes of action alleged against Crown. In addition, the record is silent as to whether or not any third parties would agree to submit to arbitration. Bos thus has fallen far short of showing the existence of third party claims which would create "a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).) If arbitration defenses could be foreclosed simply by naming third party Does, the utility of arbitration agreements would be "seriously compromised." (*Hilti, Inc.* v. *Oldach* (1st Cir. 1968) 392 F.2d 368, 369, fn. 2.)

The order denying arbitration is reversed. The trial court is instructed to enter an order requiring arbitration of all stated causes of action except the antitrust claim. The place of and law governing arbitration is to be determined by the trial court after an evidentiary hearing on the "adhesion" issue. The court is

directed to stay proceedings on the antitrust claim pending arbitration of the other controversies.

Carr, J., and Ford, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 19, 1983.

---

*Assigned by the Chairperson of the Judicial Council.