*71
 
 Opinion
 

 VOGEL (Miriam A.), J.
 

 —Although the policy of the law supposedly frowns upon
 
 all
 
 contracts that exempt a party from responsibility for his own “fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent” (Civ. Code, § 1668),
 
 [1]
 
 that policy is not enforced in every context, and contractual releases of future liability for ordinary negligence, as well as contractual indemnity provisions, insurance contracts, and other limitations on liability are generally enforceable. Conversely, however, contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated. In this case, we are presented with a hybrid contractual waiver that preserves an employee’s claims against his corporate employer but waives his right to sue the corporation’s officers, directors and shareholders for damages arising out of the employment agreement. When the employee sued the corporation and two directors for defamation, he arbitrated his claim against the corporation and won. Relying on the contractual waiver, the directors then sought and obtained dismissal of the action against them, and the employee now contends his waiver is against public policy and unenforceable. In response to the employee’s writ petition, we hold that his retention of his rights against his corporate employer validates his waiver of his right to sue the corporation’s directors and officers for defamation, and that the waiver is not
 
 per se
 
 unenforceable.
 

 Facts
 

 In 1994, Donald W. Farnham sued Sequoia Holdings, Inc. (his former employer) and two individuals, Edward R. Whitehurst and Joseph H. Brown, both of whom are shareholders, officers and directors of Sequoia.
 
 [2]
 
 Farnham alleges that, pursuant to a written agreement, he went to work for Sequoia in July 1991 as its Executive Vice President and Chief Operating Officer. In January 1993, by which time Farnham had become Sequoia’s Chief Executive Officer, a new contract was executed by Farnham and Sequoia. As did the 1991 agreement, the nine-page 1993 contract included the following provision:
 

 “Sole Remedy. In the event that [Sequoia] breaches any term or provision of this Agreement, and fails to cure said breach . . . , then [Sequoia] shall
 
 *72
 
 be deemed to be in default under this Agreement. Any dispute, controversy or claim arising from, in connection with or related to this Agreement or the making, performance or interpretation thereof, the same shall be submitted to binding arbitration in Los Angeles, California, in accordance with rules of the American Arbitration Association then existing, and judgement on the arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy.
 
 [Farnham] further waives any right he may have for a lawsuit for damages against any shareholder, director, officer, or employee of
 
 [Sequoia]
 
 for any claim, cause of action, damage, cost, or expense, arising from, in connection with, or in relating to, the terms and provisions of this Agreement or any breach thereof
 
 ” (Italics added.)
 

 For present purposes, the dozen causes of action originally pled have been pared down to a claim of defamation against Whitehurst and Brown in which Farnham alleges that Whitehurst, Brown and others were involved in some sort of “penny stock fraud” (from which they “financially prospered”) which was discovered as the result of an investigation spearheaded by Farnham. When Farnham then suspended trading of Sequoia’s stock, Whitehurst and Brown were “upset” and undertook a campaign “to harm [his] reputation and impair his ability to operate efficiently and effectively” as Sequoia’s president. To that end, Whitehurst and Brown wrote and sent an allegedly libelous letter to Sequoia’s shareholders, employees, vendors and customers.
 

 After Farnham filed suit, he filed a petition for arbitration by the American Arbitration Association. In the trial court (either just before or just after Farnham filed his petition), Sequoia filed a motion to compel arbitration of Farnham’s claims, including defamation. Sequoia’s motion was granted (at which time the claims against Whitehurst and Brown were severed because they were not parties to the employment agreement and, therefore, not bound by the arbitration provision) and Farnham’s claims were arbitrated as required by his employment agreement. In April 1997, the arbitrator awarded about $1.5 million to Farnham (including $500,000 for the defamation claim), and the award against Sequoia was thereafter reduced to a judgment.
 
 [3]
 
 Whitehurst and Brown then demurred to Farnham’s first amended complaint (an earlier demurrer had been taken off calendar while the arbitration was pending), contending that Farnham, by agreeing to the “sole remedy” provision in his employment contract, had waived “all his rights for a lawsuit for
 
 *73
 
 damages” against Sequoia’s directors. As a practical matter, Whitehurst and Brown contended Farnham had no remedy against them because they were not bound by the arbitration agreement and because Farnham had waived his right to bring a “lawsuit.” Farnham opposed the demurrer, contending Whitehurst and Brown were acting in their individual capacities at the time they defamed Farnham.
 

 The trial court sustained without leave to amend Whitehurst’s and Brown’s demurrer to Farnham’s defamation cause of action, rejecting Famham’s claim that Whitehurst and Brown were acting in their individual capacities and finding that (by the terms of his employment agreement) Farnham had “expressly waived these claims against [Whitehurst and Brown].” Farnham then filed this writ petition, contending his contractual waiver is against public policy and unenforceable because it releases the individuals from liability for their future intentional acts. Alternatively, Farnham contends the waiver does not apply to Whitehurst and Brown because they were acting in their individual capacities when they defamed Farnham. We issued an order to show cause, set a briefing schedule and set the matter for argument.
 

 Discussion
 

 Farnham contends his contractual waiver is unenforceable because it is contrary to California’s public policy or, if enforceable, that the waiver issue is incapable of resolution by demurrer because wrongful acts by directors unrelated to their positions with the corporation would not in any event be covered by the waiver. Whitehurst and Brown contend the waiver is enforceable and point to the arbitration proceedings to show the claim against them is “identical” to the defamation claim Farnham has already arbitrated against Sequoia. For the reasons explained below, we conclude the “sole remedy” provision is compatible with California’s public policy and, therefore, not unenforceable
 
 per
 
 se—but that its enforceability in this case cannot be resolved on demurrer.
 

 A.
 

 Section 1668 declares that “[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.” Famham says this is both the beginning and the end of the discussion because, the way he sees it, the “sole remedy” provision is an impermissible attempt to exempt Sequoia’s directors from liability for their own “willful” conduct. We disagree.
 

 
 *74
 
 Section 1668 is not strictly applied. Despite its prohibition of an exemption from liability for future acts of “negligence,” section 1668 does not
 
 per se
 
 prohibit a contractual release of future liability for ordinary negligence unless the “public interest” is involved or unless a statute expressly forbids it.
 
 (Henrioulle
 
 v.
 
 Marin Ventures, Inc.
 
 (1978) 20 Cal.3d 512, 517 [143 Cal.Rptr. 247, 573 P.2d 465];
 
 Nunes Turfgrass, Inc.
 
 v.
 
 Vaughan-Jacklin Seed Co.
 
 (1988) 200 Cal.App.3d 1518, 1534 [246 Cal.Rptr. 823].) Despite its purported application to “[a]ll contracts," section 1668 does not bar either contractual indemnity or insurance, notwithstanding that (aside from semantics) the practical effect of both is an “exemption] ” from liability for negligence.
 
 (Goldman
 
 v.
 
 Ecco-Phoenix Elec. Corp.
 
 (1964) 62 Cal.2d 40, 48-49 [41 Cal.Rptr. 73, 396 P.2d 377];
 
 Sacramento-Yolo Port Dist.
 
 v.
 
 Cargill of California, Inc.
 
 (1970) 4 Cal.App.3d 1004, 1012 [84 Cal.Rptr. 822].)
 

 Although exemptions from
 
 all
 
 liability for intentional wrongs, gross negligence and violations of the law have been consistently invalidated
 
 (Baker Pacific Corp.
 
 v.
 
 Suttles
 
 (1990) 220 Cal.App.3d 1148, 1151, 1154 [269 Cal.Rptr. 709] [invalidating release covering “ ‘all risks in connection with potential exposure of asbestos’” (italics omitted)];
 
 [4]
 

 Halliday
 
 v.
 
 Greene
 
 (1966) 244 Cal.App.2d 482, 488 [53 Cal.Rptr. 267] [otherwise valid exculpatory lease clause cannot cover violation of industrial safety order];
 
 Klein
 
 v.
 
 Asgrow Seed Co.
 
 (1966) 246 Cal.App.2d 87, 100 [54 Cal.Rptr. 609] [invalidating disclaimer of warranty where there was fraud]), we have not found any case addressing a
 
 limitation
 
 on liability for intentional wrongs, gross negligence or violations of the law. (See
 
 Wheeler
 
 v.
 
 Oppenheimer
 
 (1956) 140
 
 *75
 
 Cal.App.2d 497, 499 [295 P.2d 128] [a provision restricting recovery to actual “costs and expenses” is a limitation on liability, not a provision for liquidated damages, because it is “not intended to prescribe a definite liability,” only to impose a “limitation within which damages might be proved”]; see also
 
 Tunkl
 
 v.
 
 Regents of University of California
 
 (1963) 60 Cal.2d 92, 101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693] [“no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party”].)
 

 The question, therefore, is whether Farnham’s retention of his rights against Sequoia permits us to view his waiver of his claims against Whitehurst and Brown as a
 
 limitation
 
 on liability rather than as a complete exemption from
 
 all
 
 liability.
 

 B.
 

 Whitehurst and Brown rely on
 
 Berman
 
 v.
 
 Dean Witter & Co., Inc.
 
 (1975) 44 Cal.App.3d 999 [119 Cal.Rptr. 130], contending the “sole remedy” provision of Famham’s employment contract is primarily an enforceable agreement to arbitrate, with the incidental (but no less enforceable) provision prohibiting lawsuits against them.
 
 Berman
 
 is not dispositive.
 

 In
 
 Berman,
 
 a husband and wife (Jack and Leona Berman) sued Dean Witter and Norman Sobel (a Dean Witter agent) for negligence and breach of fiduciary duty arising out of a transaction handled by Sobel (acting on Jack’s instructions) regarding Leona’s account at Dean Witter. Dean Witter and Sobel answered and petitioned for arbitration according to the terms of a written customer agreement signed by Leona (but not by Jack and not by Norman Sobel) covering “any controversy” between Dean Witter and Leona “arising out of or relating to” the customer agreement.
 
 (Berman
 
 v.
 
 Dean Witter & Co., Inc., supra,
 
 44 Cal.App.3d at pp. 1001-1002.) Jack and Leona opposed the petition on the ground that neither Sobel nor Jack were signatories to the contract.
 
 (Id.
 
 at p. 1002.) Although the trial court agreed with the Bermans, Division Two of our court did not: “Sobel and Jack Berman though not signatories to the agreement were both acting as agents for the signatories. Sobel is as entitled to the benefit of arbitration as is his principal [Dean] Witter. . . . Jack on the other hand is not entitled to any greater right than his principal Leona.”
 
 (Id.
 
 at p. 1004.)
 

 The differences are clear. In
 
 Berman,
 
 Sobel was sued as Dean Witter’s agent. In our case, Farnham alleges just the opposite, that Whitehurst and Brown were acting in their individual capacities and not as Sequoia’s agents.
 
 *76
 
 In
 
 Berman,
 
 the only question was whether the action against Sobel would be litigated in court or arbitrated as required by the customer agreement. In our case, Whitehurst and Brown refused (justifiably, since they were not parties to the contract) to be bound by the arbitration provision and now say they cannot be sued. In simpler terms, the issue in
 
 Berman
 
 was
 
 where
 
 liability would be determined. The issue here is
 
 whether
 
 liability will be determined.
 

 C.
 

 Although we do not find
 
 Berman
 
 dispositive, we agree with Whitehurst and Brown that Famham’s waiver should not be viewed in the abstract and that its validity must be determined in light of Famham’s retention of his arbitration rights vis-á-vis Sequoia.
 

 Farnham agreed with Sequoia that “[a]ny dispute, controversy or claim arising from, in connection with or related to [his employment contract would be] submitted to binding arbitration .... [Farnham] further waive[d] any right he may have for a lawsuit for damages against any shareholder, director, officer, or employee of [Sequoia] for any claim, cause of action, damage, cost, or expense, arising from, in connection with, or in relating to, the terms and provisions of [his employment contract] or any breach thereof.” In Famham’s first amended complaint, he alleged only one cause of action for defamation (that is, the factual allegations were and are identical as to Sequoia, Whitehurst and Brown). When Sequoia petitioned for arbitration, Farnham (1) did not oppose the petition and (2) did not object when Whitehurst and Brown sought severance so they would not have to participate in or be bound by the arbitration. Instead, Farnham arbitrated his defamation claim against Sequoia and won, and he now wants to litigate the identical claim against Whitehurst and Brown. Indulging all presumptions in Famham’s favor
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58];
 
 Alcorn
 
 v.
 
 Anbro Engineering, Inc.
 
 (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]), we suppose it is
 
 possible
 
 that Farnham could prove he was not fully compensated by the $500,000 arbitration award based upon Whitehurst’s and Brown’s libelous letter, or that he could prove the damages caused by Whitehurst and Brown somehow differed from those found by the arbitrator (although we do not see how), or that he could persuade a different trier of fact that he is entitled to punitive damages against Whitehurst or Brown or both of them (the arbitrator found he was not entitled to punitive damages against Sequoia). What this means is that, but
 
 *77
 
 for the “sole remedy” provision, Farnham has
 
 pled
 
 a right to another bite at the defamation apple.
 
 [5]
 

 Under the circumstances of the “sole remedy” provision in Famham’s contract, we do not believe the waiver vis-á-vis Whitehurst and Brown is
 
 per se
 
 prohibited by section 1668.
 
 [6]
 
 As explained above, a contract exempting liability for ordinary negligence is valid under some circumstances, notwithstanding the language of section 1668. In our view, it follows that a contractual
 
 limitation
 
 on the liability of directors for defamation arising out of their roles as directors is equally valid where, as here, the injured party retains his right to seek redress from the corporation.
 
 [7]
 

 (Tunkl
 
 v.
 
 Regents of University of California, supra,
 
 60 Cal.2d at p. 101 [“. . . no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed
 
 *78
 
 upon the other party”]; cf.
 
 Philippine Airlines, Inc.
 
 v.
 
 McDonnell Douglas Corp.
 
 (1987) 189 Cal.App.3d 234, 237 [234 Cal.Rptr. 423] [commercial entities are entitled to contract to limit the liability of one to the other or otherwise to allocate the risk of doing business].)
 

 D.
 

 In a free market society, we see no public policy reason why a business should not be allowed to insulate its directors from litigation with its employees, and that is all that has been done here by way of the particular contractual provision accepted by Farnham. We believe a business is entitled to protect its officers, directors and shareholders from the high cost of litigation arising out of suits by employees, and where a novel approach to the problem does not violate any fundamental public policy, we do not believe it is our job as judges to “ ‘sit as a super-personnel department that reexamines an entity’s business decisions’ ” that have been accepted by the party who now seeks to avoid his agreement.
 
 (Marks
 
 v.
 
 Loral Corp.
 
 (1997) 57 Cal.App.4th 30, 64 [68 Cal.Rptr.2d 1], quoting
 
 Dale
 
 v.
 
 Chicago Tribune Co.
 
 (7th Cir. 1986) 797 F.2d 458, 464.) In short, we conclude that the “sole remedy” provision in Farnham’s contract does not conflict with any public interest but is instead the result of a private, voluntary transaction in which Farnham simply agreed to look to Sequoia to shoulder a risk that might otherwise have fallen on its officers, directors and shareholders.
 
 [8]
 

 Disposition
 

 Let a peremptory writ of mandate issue commanding the trial court to vacate its order sustaining without leave to amend the demurrer by Whitehurst and Brown to Farnham’s defamation cause of action, and to fix the time within which an answer to that cause of action shall be filed. The parties are to pay their own costs of these writ proceedings.
 

 Spencer, P. J., and Masterson, J., concurred.
 

 [1]
 

 All section references are to the Civil Code.
 

 [2]
 

 Farnham alleges that Whitehurst is a director and shareholder, but not an officer or employee and that Brown is a director and “the Chairman of the Board” of Sequoia. Our simplified references to both men as “directors” is intended to include their other positions as alleged by Farnham. We note, however, that we express no view about whether the result we reach would be the same if the individuals in question were employees but not officers, directors or shareholders. We note also that there are other defendants, but with the exception of Sequoia Creative, Inc., a subsidiary of Sequoia included in our references to Sequoia, they are not involved in these writ proceedings.
 

 [3]
 

 The award shows that Farnham pursued only two claims at the arbitration, breach of his employment agreement and defamation, the latter described by the arbitrator this way: “[Farnham] claims to have been libeled by a Report to Shareholders. . . composed and sent by Mr. Joseph Brown and Mr. E. R. Whitehurst, both members of Sequoia’s Board.” In her detailed award, the arbitrator found that Farnham had proved every element of his defamation claim, and attributed $500,000 of the total award to his damages flowing from the defamation. The balance of the $1.5 million was for breach of contract damages, including interest and some expenses.
 

 [4]
 

 Baker Pacific Corp.
 
 v.
 
 Suttles, supra,
 
 220 Cal.App.3d 1148, appears to be the only employment case considering a similar (but clearly distinguishable) release. Thomas Suttles and Ralph Runckel had been employed by Baker Pacific Corporation, an asbestos abatement contractor, on asbestos removal projects but were on “layoff status” during October 1987.
 
 (Id.
 
 at pp. 1150-1151.) In 1987, Baker Pacific entered a contract with Metropolitan Life Insurance Company for the removal of asbestos from a building owned by Metropolitan. As a condition precedent to the award of the contract to Baker Pacific, Metropolitan had required Baker Pacific’s employees to sign a release that provided, as relevant: “ T knowingly assume
 
 all risks
 
 in connection with potential exposure of asbestos and I do hereby covenant not to sue, and to release and forever discharge’ ” Baker Pacific, Metropolitan, and everyone else remotely involved with the project.
 
 (Id.
 
 at p. 1151.) Within days after the contract was signed, Baker Pacific offered work to Suttles and Runckel but they refused to sign the release (they said it was against public policy) and Metropolitan, in turn, refused to permit Baker Pacific to hire them. In Baker Pacific’s declaratory relief action against Suttles and Runckel, Division Two of the First District agreed with Suttles and Runckel, rejecting Baker Pacific’s reliance on its contractual obligation to Metropolitan.
 
 (Id.
 
 at p. 1154.)
 
 Baker Pacific
 
 is different from our case on several significant points:
 
 Baker Pacific
 
 involved a (1) compelled (nonnegotiable) release of (2) all liability in favor of (3) every party potentially responsible for all risks. In our case, it appears at this pleading stage that Famham’s agreement with Sequoia was negotiated, not compelled (it replaced an existing agreement), and it is undisputed that Farnham retained his right to seek redress from Sequoia (which he did, quite successfully).
 

 [5]
 

 We summarily reject Whitehurst’s and Brown’s rather fanciful contention that Famham’s suit against them is barred by res judicata or collateral estoppel. Since Farnham prevailed in the arbitration, we suspect he would be delighted to rely on his judgment as a bar to any defense raised by Whitehurst and Brown. (See 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280 et seq.) If Whitehurst and Brown mean to say that Farnham cannot recover twice for the same injury (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1322, pp. 779-780), that issue (a) has not been briefed, (b) cannot be determined on demurrer, and (c) applies only to compensatory damages.
 
 (Merlo
 
 v.
 
 Standard Life & Acc. Ins. Co.
 
 (1976) 59 Cal.App.3d 5, 20 [130 Cal.Rptr. 416].) And although the record before us is not altogether clear, it appears that Farnham still has pending in the trial court a motion to add Whitehurst and Brown as additional judgment debtors to his judgment against Sequoia, on the theory that the directors are the alter ego of the corporation.
 

 [6]
 

 We emphasize
 
 “per
 
 se” because we believe the provision
 
 would
 
 violate section 1668 if read to include any and all wrongful acts by Whitehurst and Brown, without regard to whether those acts were related to their roles as directors of Sequoia. One example makes the point: If Farnham sued Brown for conversion, alleging that Brown had stolen Famham’s personal checks, forged Famham’s signature, cashed the checks and pocketed the proceeds, section 1668 would defeat Brown’s reliance on the waiver in Famham’s employment contract. Since real-world facts are never as cut and dried as an appellate hypothetical, this case cannot be resolved by demurrer. Farnham is entitled to an opportunity, at trial or in opposition to an evidentiary-based motion such as summary judgment, to present whatever evidence he might have to prove that Whitehurst and Brown were, as alleged, acting as individuals and for their own self-interests (that is, not for the benefit of Sequoia) when they defamed Farnham.
 

 [7]
 

 We are concerned in this case with a claim of defamation, and express no view about the validity of the “sole remedy” provision if Famham’s claim alleged fraud or some other intentional tort.
 
 (See Allied Paper, Inc.
 
 v.
 
 H.M. Holdings, Inc.
 
 (1993) 86 Ohio.App.3d 8 [619 N.E.2d 1121, 1127-1128] [notwithstanding that the dispositive law prohibited contractual indemnity for fraud, the indemnity may legitimately cover liability for “bad faith” acts].) We note also the existence of a line of cases based on various kinds of alarm company limitations on liability; such provisions are sometimes upheld as to intentional torts as well as negligence and gross negligence, but not as to fraud. (See, e.g.,
 
 L. Luria & Son, Inc.
 
 v.
 
 Honeywell, Inc.
 
 (Fla.Dist.Ct.App. 1984) 460 So.2d 521;
 
 Ace Formal Wear
 
 v.
 
 Baker Protective Service
 
 (Fla.Dist.Ct.App. 1982) 416 So.2d 8;
 
 Koos Van Den Akker Atelier
 
 v.
 
 Honeywell
 
 (1989) 148 A.D.2d 359 [539 N.Y.S.2d 7];
 
 Calvin Klein Ltd.
 
 v.
 
 Trylon Trucking Corp.
 
 (2d Cir. 1989) 892 F.2d 191;
 
 Peck
 
 v.
 
 Rollins Protective Services
 
 (1988) 189 Ga.App. 381 [375 S.E.2d 494].)
 

 [8]
 

 We recognize, of course, that a corporation’s insolvency could affect the ultimate outcome. On the record before us, there is nothing to suggest that Sequoia is unable to satisfy Famham’s judgment (and it may have already done so). We emphasize again, however, that our holding in this case is only that the “sole remedy” provision is not
 
 per se
 
 invalid under section 1668, and we do not decide any issues that may arise as the result of facts that are not now before us.