**FONTANA PRODUCTS INC., a California corporation, Plaintiff–counter–claimant–Appellee,**

v.

**SPARTECH PLASTICS CORPORATION, a corporation, Defendant–counter–claimant–Appellant.**

**Fontana Products Inc, a California corporation, Plaintiff–Appellee,**

v.

**Spartech Plastics, Inc., Defendant–Appellant.**

Nos. 99–56162, 99–56580.

D.C. No. CV–97–06982–RAP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001.

Decided March 8, 2001.

Before FERGUSON, TASHIMA, and FISHER, Circuit Judges.

MEMORANDUM*

Appellee, Fontana Products, Inc., hired Appellant, Spartech Corporation, to make plastic sheets to be used as part of Fontana's "Safety–Rail" system, which is designed for the inside of horse racing tracks to prevent injuries to horses and jockeys. Fontana specified the sheets were to be made out of Santoprene, but eventually discovered the sheets were being made out of a different, cheaper plastic known as CM–1182. Fontana alleged that Spartech defrauded it by misrepresenting it was receiving Santoprene sheets—and making it pay for Santoprene—when, in reality, Spartech had secretly switched to CM–1182 to increase its profits.

Fontana sued Spartech for breach of contract and fraud. The district court denied Spartech's motions for judgment as a matter of law and for a new trial following a jury verdict in Fontana's favor on both causes of action. Spartech now appeals those denials, as well as the district court's award of attorney's fees to Fontana's counsel. We have jurisdiction under 28 U.S.C. § 1291. We review a denial of a motion for judgment as a matter of law de novo. *Saman v. Robbins*, 173 F.3d 1150, 1155 (9th Cir.1999). We review a district court's ruling on a motion for new trial for an abuse of discretion. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

I. Economic Loss Rule and Punitive Damages

Spartech argues the district court erred (1) by not applying California's economic loss rule to limit Fontana's recovery and (2) by allowing punitive damages. Neither of these arguments was raised below and we decline to address them on appeal. "It is well-established that an appellate court will not consider issues that were not properly raised before the district court." *Slaven v. American Trading Transp. Co., Inc.*, 146 F.3d 1066, 1069 (9th Cir.1998).

II. Substantial Evidence

Spartech also argues there was not substantial evidence to support the

* This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as may be provided by Ninth Circuit Rule 36–3.

jury's fraud verdict, first as to the substitution of CM–1182 for Santoprene, and second as to the possibility that Spartech put "regrind" in the caps of the plastic sheets against Fontana's instructions. Under the substantial evidence standard of review, this court must affirm where there is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir.1999) (en banc). After reviewing the record, we believe the evidence—albeit disputed—was adequate to support the jury's verdict.

In general summary, Fontana had an on-going agreement with Spartech to produce the Santoprene sheets for its safety-rail. Although Spartech raised the price of the sheets several times during the relationship, the price of Santoprene had gone up only once. By substituting Santoprene with the cheaper replacement plastic CM–1182, Spartech increased its profits per order by roughly 75 percent. Internal Spartech documents identified CM–1182 was being used to fill Fontana's orders, but Spartech's invoices and acknowledgments of orders to Fontana continued to indicate the orders were still being made of Santoprene. Internal Spartech documents also indicated "regrind" was to go into certain layers of the sheets in which it should not have been present.

## III. Rule 37 Sanctions

 Two issues stem from David Hutton's late produced documents. First, Spartech contests Fontana's counsel's mention of them in her closing statement. We decline to address this issue because Spartech did not object to Fontana's counsel's closing argument. "The usual rule in most courts, including this one, is that there must be objection to what is claimed to be improper argument, or the point is waived." *Huson v. Rhay*, 446 F.2d 861, 862 (9th Cir.1971); *see also United States v. Sehnal*, 930 F.2d 1420, 1425 (9th Cir. 1991) ("When defense counsel—an able and experienced lawyer—chose to remain silent, he waived his objections.").

 Second, the district court acted within its discretion in fashioning a Rule 37 sanction against Spartech. We review the imposition of Rule 37 discovery sanctions for an abuse of discretion. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). The court found Spartech's violation of its Rule 37 order sloppy and part of a pattern of dilatory litigation. In fashioning an appropriate remedy, the district court decided against allowing Spartech the choice of using the documents, and instructed the jury it could consider Spartech's failure to comply with the Rule 37 order.

Fed.R.Civ.Pro. 37(b)(2) grants a district court broad discretion in shaping sanctions, providing a nonexhaustive list of suggestions and granting it the power to make "such orders in regard to the failure as are just." The district court acted appropriately in the context of this case.

## IV. Damage Award

 Spartech next argues a new trial is necessary because the verdict was based on duplicative and speculative damages. A reviewing court must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence or based only on speculation or guesswork. *See Lambert*, 180 F.3d at 1017.

 Fontana's damages expert, certified public accountant David Couch, introduced, and was vigorously cross-examined on, several "schedules" he prepared that

estimated various damage components. He estimated the cost to reimburse Fontana for its purchase price and the cost for Fontana to replace all the safety-rails around the country that were made from CM–1182 instead of Santoprene. The expert also factored in lost profits and damage to Fontana's reputation, calculating total actual damages at nearly $5 million. The jury awarded just over $1.6 million. This amount is within the range supported by our independent review of the record.

■ The jury also awarded damages of roughly $230,000 for breach of warranty. According to Spartech, the total purchase price alone justified recovery of $521,888 for breach of warranty. The award for breach of warranty is therefore also within the range supported by the record. That the jury awarded less than half of the purchase price indicates it reduced the award to avoid duplicating amounts already given. The court instructed several times against awarding speculative or duplicative damages and the special verdict form, too, cautioned against awarding duplicative damages. "Juries are presumed to follow the court's instructions." *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir.1997).

Spartech also argues Couch's estimation of lost profits was erroneous because his analysis relied on lost gross profits and not lost net profits. *See Resort Video, Ltd. v. Laser Video, Inc.*, 35 Cal.App.4th 1679, 1700, 42 Cal.Rptr.2d 136 (1995). The record before us does not reflect any clear articulation of the precise distinctions between net and gross profits in general, much less the nuances that go into a net profit calculation specifically in the manufacturing context. Spartech cross-examined Couch at length on every element used in his various analyses. Defendant's net profit theory was adequately presented to the jury, and the jury was instructed to

award only net profits. *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App.4th 464, 54 Cal. Rptr.2d 888, 903 (1996) ("As to the reasonableness of the assumptions underlying the experts' lost profit analysis, criticisms of an expert's method of calculation is a matter for the jury's consideration in weighing that evidence."). Because the jury's award was within the range supported by the record, we leave it intact.

## V. Damage Waiver

■ Spartech's next argues its damages should have been capped by the district court because of a provision in the forms it sent to Fontana limiting its liability to the price of the product at issue. Spartech confuses a reasonable limitation on liability with an impermissible limitation on liability for fraudulent conduct. *See* Cal.Com.Code § 2719 (comments); *see also Farnham v. Sequoia Holdings, Inc.*, 60 Cal.App.4th 69, 70 Cal.Rptr.2d 85, 86 (1997) ("[C]ontractual releases of future liability for fraud and other intentional wrongs are invariably invalidated."). The damage waiver, whether or not it materially altered the contract, cannot limit Spartech's liability for fraud.

## VI. Spartech's Counterclaim

■ Spartech also contends Fontana still owes it $40,000 for the last order of plastic sheets, which Fontana accepted and used. Fontana, however, validly revoked its acceptance of the goods under Cal.Com. Code §§ 2608(1)(b) and 2608(2) as soon as it discovered the fraud, and thus was not obligated to pay for them. *See generally,* Cal.Com.Code §§ 2602, 2606 and 2608.

## VII. Attorney's Fees

■ Lastly, Spartech contests the amount of attorney's fees the district court awarded under Cal.Civ.Code § 1717. The

court properly determined the contract and tort claims were "inextricably intertwined," such that apportioning the attorney's time between the two was "impracticable, if not impossible." *Abdallah v. United Savings Bank,* 43 Cal.App.4th 1101, 51 Cal.Rptr.2d 286, 293 (1996); *see Reynolds Metals Co. v. Alperson,* 25 Cal.3d 124, 158 Cal.Rptr. 1, 4, 599 P.2d 83 (1979).

 The district court considered several factors in arriving at a final award amount. The court noted it was not bound by counsel's contingency fee agreement; but, it could consider the agreement and award fees under it if warranted in light of other relevant factors such as, among other things, difficulty of the case, time and effort involved and the skill of counsel. *See Glendora Community Redevelopment Agency v. Demeter,* 155 Cal.App.3d 465, 202 Cal.Rptr. 389, 394–95 (1984).

The court also compared the number yielded by application of the contingency fee agreement to the number produced by using the lodestar method enhanced by a multiplier, concluding that application of the contingency fee agreement produced a figure in line with the lodestar amount. After reviewing the record, we do not believe the district court abused its discretion in its award of attorney's fees. *See Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000).

AFFIRMED.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.